```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x

STANDARD FIRE INSURANCE CO.     :  No. 3:12CV-851 (SRU)
                                :  915 Lafayette Boulevard
         vs.                    :  Bridgeport, Connecticut
                                :
                                :  April 27, 2015
OMEGA FLEX                      :

- - - - - - - - - - - - - - - - x


                     TELEPHONE CONFERENCE


B E F O R E:

     THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.


A P P E A R A N C E S:

   FOR THE PLAINTIFF:

        STUTMAN LAW
             20 East Taunton Road, Suite 403
             Berlin, New Jersey  08009
          BY:  THOMAS PAOLINI, ESQ.
               THOMAS J. UNDERWOOD, JR., ESQ.

   FOR THE DEFENDANT:

        WILSON ELSER MOSKOWITZ EDELMAN & DICKER
             1133 Westchester Avenue
             White Plains, New York  10604
          BY:  THOMAS M. DEMICCO, ESQ.


                 Susan E. Catucci, RMR
                 Official Court Reporter
                 915 Lafayette Boulevard
              Bridgeport, Connecticut  06604
                   Tel: (917)703-0761
```

1               (Whereupon the following session was held in
2       chambers telephonically.)
3                       (1:00 O'CLOCK, P. M.)
4               THE COURT:  Stefan Underhill.
5               MR. PAOLINI:  Hi, Judge.  This is Tom Paolini
6       and Tom Underwood on behalf of Standard Fire.
7               MR. DeMICCO:  Good morning, Your Honor.  This is
8       Tom DeMicco on behalf of Omega Flex.
9               MR. PAOLINI:  Judge, this is Tom Paolini.  The
10      plaintiff is the one who requested the call.  The specific
11      purpose for the call is we've requested a deposition of an
12      Omega Flex employee and Omega Flex is refusing to produce
13      this woman.  Her name is Robin Thurm.
14              To kind of get started, we feel this is just a
15      continued pattern of delaying this case.  It seems as if
16      every time we attempt to take substantive discovery, we're
17      met with opposition, the case gets delayed and we end up
18      back before Your Honor on these issues.
19              As Your Honor will recall, we took the first
20      deposition of Omega Flex corporate designee that was
21      deposed, and per the Court order, we were able to take
22      that.  We took that deposition back in December of 2014.
23              During that deposition, some training material
24      came out, a training video was referenced in the video
25      from 1998, and a presentation CD was referenced during

1    that deposition, and that presentation CD was not produced
2    at that time, nor was the video.  We had to ask for it.
3             And after some requests we did eventually get a
4    training video from 1998 and a power point presentation,
5    which has now been said to be the CD presentation that was
6    referenced in the training material.  And that power point
7    presentation from our perspective is pretty important.
8             As Your Honor will recall, you presided over a
9    trial in this case where Omega Flex had taken the position
10   that bonding was a requirement of theirs.
11            The -- this power point presentation, in it, and
12   it's the presentation that Omega Flex says they give to
13   their trainers and they show at their training sessions,
14   doesn't use the word "required" for bonding; it uses the
15   word they "recommend" it, which is in our opinion a
16   significant difference from the position they took at
17   trial.
18            Now, that training material -- so we had that
19   when we took the second, the continued deposition of the
20   Omega Flex representative.  And during that deposition, we
21   were asking about the documents that had been produced in
22   these litigations and, once again, the Omega Flex
23   representative indicated he was not the individual
24   responsible for producing the documents in these cases.
25            We believe, Your Honor, that that person is Tim

1    Scanlan.  He's the general counsel, he's the person we had
2    previously asked for and we had not been permitted to take
3    his deposition, but here we go again with the document
4    issue and we still have never questioned the person that
5    we believe is responsible for all these document
6    productions.
7           The power point presentation, specifically the
8    witness testified he was not sure who prepared it, he
9    thought it might be a guy named Art Whyrock (ph) but he
10   wasn't sure.  He did refer to this power point as a
11   "controlled document," which he means a critical document.
12   And what he explained was the control documents are
13   documents that have control numbers on them and they are
14   tracked by Omega Flex.
15          And I asked him, who's the person at Omega Flex
16   essentially most knowledgable about these control
17   documents, and he says the quality assurance manager is
18   Robin Thurm, and he identified her as the person most
19   knowledgable.  Now she's the individual that we've now
20   asked to depose and we've been refused.
21          And I guess one other thing that is important to
22   mention is, in February, Omega Flex identified Mr. Albino
23   and Mr. Torbin as additional, I guess what we deem
24   potential witnesses at trial in this case.  It was
25   February 12th when they identified them.  We requested

1  their Deps on February 17.  We didn't get dates for their
2  depositions until March 17th, a month later, and when we
3  did, we were given back-to-back dates in April, April 22nd
4  for Mr. Trifle (ph) in Pennsylvania and then a date of
5  April 23rd, the next day, of Mr. Albino in Florida.
6        And essentially were we told these are high
7  level Apex employees and so their schedules are their
8  questions.  Because of the timeframe between those two
9  schedules, it wasn't practical to keep those depositions,
10 so that now they've been scheduled for May 20th and June
11 5th respectively.
12       The point is, they were, we were told, high
13 level employees and they are tough to depose and get a
14 hold of, and we were essentially told Robin Thurm, and the
15 reason we were told we couldn't depose her is we were told
16 she was a low level employee.
17       So, I think it was important to kind of
18 understand how we got here and the bottom line why we're
19 trying to take what we feel is significant and substantive
20 discovery, and each time we're not being permitted to do
21 so.
22       THE COURT:  All right.  Mr. DeMicco?
23       MR. DeMICCO:  Good morning, Your Honor.  Thank
24 you, first let me thank you for your time on this call.
25       I apologize for the objection.  I don't mean to

```
 1    burden the Court with our objection but my objection
 2    really is based on relevance.
 3              I've spoken with Robin Thurm, she's not a
 4    quality assurance manager, although the corporate manager
 5    may have described her in that fashion.  She is an ISO
 6    coordinator.  ISO, as you know probably, is the
 7    International Standards Organization.  Omega Flex is the
 8    manufacturer that holds the certification, must comply
 9    with certain policies and procedures in order to benefit
10    from that certification.
11              So, she is basically tasked with managing their
12    document control program which is part of that ISO
13    process.  She has no involvement in creating the
14    documents.  She has no first hand knowledge as to the
15    substantive contents of those documents.  Her only
16    involvement is to basically serve as a custodian of those
17    documents, which is all created -- creating a written
18    record of when the document is first created, who created
19    the document, and then if the document is then thereafter
20    revised, she shepherds through that process by creating a
21    written record of the document, the document needs to be
22    revised on a consensus process with the people who are in
23    control at the company.
24              She doesn't have any information about
25    Mrs. Pascarella's CSST, has no involvement in the design
```

1  and manufacture of this product, she was not involved in
2  the sale of this product, she's not involved in creating
3  any of these warnings or training documents that they are
4  seeking.
5           I'd also like to point out that plaintiff has
6  deposed the installer of the TracPipe CSST a gentleman by
7  the name of Timothy McDonahue (ph).  On page 60 of that
8  deposition transcript, he was asked if he actually took
9  part in reading the design or installation guide prior to
10 installing the TracPipe CSST, which he denied.
11          He also claims to have taken the installer's
12 class but admitted he never received the training
13 certification card, and he doesn't appear in Omega Flex's
14 training databases.  In fact, he just recently took the
15 training course in January of 2015.  So, you know, I don't
16 see any causation on any warnings issue or instruction
17 issue in this case.
18          The person who actually did the installment
19 admitted they didn't review the warnings or instructions
20 that were offered with this product.  So how would the
21 documents have any relevance to this case?  I don't see
22 the relevant connection.
23          And I've offered to Mr. Paolini, you know, we're
24 giving up the Chief Operating Officer, Mark Albino, for
25 his deposition, as Mr. Paolini has pointed out, in June,

1  June 5th.  We're also giving up the Senior Vice
2  President's deposition in May, on May 20th, as well.
3  We've given countless hours of corporate representatives'
4  deposition testimony, a lot of which focus on training and
5  instruction which I don't think are relevant in this case
6  for those reasons I stated earlier.
7          And, you know, I'm happy to -- I stipulate to
8  Mr. Paolini's contention that we use the word
9  "recommendation" as opposed to "required."  We are a
10 building supply manufacturer that sells -- our client is a
11 building supply manufacturer that sells product all over
12 the United States and each particular jurisdiction has its
13 own building codes.  We can't tell someone that bonding is
14 required because in some instances it's not required by
15 the local building code.  So that's why we say in our
16 instructions that they should comply with the local
17 building code and that takes precedent over any
18 instructions that we give.
19         And, you know, the issue is what it is.  He's
20 taken the deposition of the local building inspector, he's
21 taken the deposition of Omega Flex's corporate
22 representative.  We've produced over 5,000 pages of
23 documents, we served an additional document request for
24 the FGP training documents that were identified by
25 Mr. Torbin in his deposition.  We are going to comply with

1    that request.  Some of these document he already has
2    through a prior production.
3            You know, as far as the TracPipe training
4    installation power point, it was our position that
5    document wasn't originally requested in their original
6    request for production, but if there's additional
7    documents they think they are owed, we're happy to produce
8    them.  We're just objecting to the fact he wants to take
9    the deposition of a part time ISO coordinator that doesn't
10   have any relation information to the case.
11           MR. PAOLINI:  I'll be happy to respond, Judge.
12           First of all, I disagree that the document was
13   not requested originally, we asked for all documents
14   related to the certification process.  A document that is
15   shown during the training session clearly would fall into
16   that category.
17           The issue of relevance -- Judge, my recollection
18   is at the last trial before Your Honor was they took the
19   position that bonding was a requirement.  If I heard what
20   Mr. DeMicco just said now, he's now saying, well, no, they
21   don't require it.  Well, that was their defense, that the
22   system had not been installed correctly and because it was
23   not bonded.  The training material clearly indicates that
24   they weren't -- during these training classes, they were
25   not telling these installers that it was a requirement.

1   They were at best, at best, telling them it was a
2   recommendation.
3           In terms of relevance, whether the installer
4   here took the course or not, and that's in dispute, if
5   you're going to contend that he didn't do the installation
6   correctly, then you've got to show that he didn't do the
7   installation correctly.
8           And in this case, he -- if bonding wasn't
9   required, you can't take the position that the
10  installation was done incorrectly.  That's critical.  So,
11  whether he took the course or not to me is irrelevant.
12  It's really important.
13          The second, the other thing I'd like to add is
14  now, if I understand correctly, the witness who was their
15  corporate designee identified Robin Thurm as the quality
16  assurance manager, we're now being told, no, she's not the
17  quality assurance manager.
18          Judge, this goes back to our position once again
19  that we're being given witnesses that they choose to give
20  us and not the witnesses we want to question.  That was my
21  point with Mr. Scanlan as the person who signed off on the
22  discovery in this case, the person responsible for
23  producing the documents.  I've yet to be able to question
24  anybody about the document production in this case.
25          Now we request Ms. Thurm and we're told, well,

1  she really isn't the quality assurance manager, she just
2  tracks these documents.  Well, we have questions regarding
3  that process as well.
4          These are not novel theories or novel issues
5  we're looking at.  We're looking at the substance of these
6  cases and we're not being able to take the discovery we'd
7  like to take.
8          THE COURT:  Well, I don't really see a problem
9  with taking Thurm's deposing.  She's got potentially
10 admissible evidence and it seems to me that that's an
11 appropriate deposition.  So, it may be short if she's as
12 uninvolved as has been represented, but it seems to me
13 there's no problem with taking her deposition.
14         Going back to Scanlan for a second, he's not a
15 trial witness, is he?
16         MR. DeMICCO:  No, Your Honor.  He's never been a
17 trial witness.  He's an attorney who works on the defense
18 of these cases.
19         THE COURT:  All right, well --
20         MR. DeMICCO:  And neither has --
21         MR. PAOLINI:  Judge, he's the individual who
22 signed off on all their discovery in these cases.  We
23 believe he's not just an attorney; he's working in a role,
24 two roles there, and he's the one that is responsible for
25 the document productions in these cases and, again, their

1    corporate designee said he wasn't involved in the
2    documents being produced in these cases.
3             MR. DeMICCO:  Your Honor, if I could just
4    respond, just because he wasn't involved doesn't mean he
5    doesn't knowledgable, and I don't think Mr. Paolini's
6    being fair when he says that our witness wasn't prepared
7    when he didn't have anything about the history of the
8    training documents in his topics listed in the corporate
9    representative deposition notice, if I recall correctly.
10            We did our best in good faith to produce a
11   witness who was knowledgable.  I don't think that
12   Mr. Paolini has any had any dead ends with this particular
13   witness in the last deposition and he had over eleven
14   hours of testimony.  You know, the last deposition, it was
15   my understanding, was for the purpose of going over the
16   prior claim notices which we produced.  We produced every
17   single claim notice that Omega Flex has since 2000 and
18   2014.
19            But, Your Honor, just going back to Robin
20   Thurm's testimony, I'm not sure how her -- any information
21   she has would be deemed admissible.
22            THE COURT:  Well, are you going to take the
23   position at trial that bonding was required?
24            MR. DeMICCO:  No, we're not going to take the
25   position that bonding was required.  Bonding was

1  recommended and has always been recommended, but it's what
2  the local building codes require.  And we're not there to
3  interpret the local building code.
4          THE COURT:  Okay, well, you're going to -- the
5  issue of what your recommendations are is going to come up
6  at trial.  It seems to me that if she's kind of the one
7  who's keeping track of the documents that relate to
8  training and the CD and video that have been mentioned,
9  then she's potentially, she's potentially got information
10 that would be admissible at trial on that topic.
11         MR. DeMICCO:  Your Honor, if I could --
12         THE COURT:  Go ahead.
13         MR. DeMICCO:  I'm sorry, I didn't mean to
14 interrupt.  Please go ahead.
15         THE COURT:  No, go ahead.
16         MR. DeMICCO:  I was just going to also bring to
17 the Court's attention that there's been a joint
18 stipulation submitted to slightly adjust the discovery
19 schedule in this case and set this matter down for a date
20 certain for trial this January of 2016.
21         MR. PAOLINI:  Yes, I was out at the end of last
22 week.  I don't know if the proposed order got sent over or
23 not.  If it didn't, it will be get sent out this
24 afternoon.  But I think we all agreed, Judge, we'd like to
25 get this case to the end so we're hoping we can agree to a

1    date certain in January and just get this thing, get
2    through the rest of the discovery we need to.
3            Obviously we'll depose Ms. Thurm.  The sooner we
4    can get her deposition scheduled, the better, in case
5    anything comes out of that.  And, you know, again, I
6    understand -- I believe Your Honor has previously said you
7    didn't want us deposing their general counsel.  Is that --
8    I assume that's still the position.
9            THE COURT:  Well, look, if you have arguments,
10   based upon what you found, that Mr. Scanlan needs to be
11   deposed, then you can raise them with Mr. DeMicco, and if
12   you two can't work it out then I'll take the issue up
13   again.  But --
14           MR. PAOLINI:  Okay.
15           THE COURT:  -- as we all know, taking the
16   deposition of a lawyer is an ugly process and it seems to
17   me that when the issue last came up, it seemed to me it
18   wasn't worth a candle.
19           MR. PAOLINI:  No, and we're fine with that, Your
20   Honor.  We just want to take the depo that we at least
21   asked for, and it sounds like we can now go ahead and do
22   that.
23           THE COURT:  Right.
24           In terms of the schedule, I haven't seen the
25   proposed stipulation.  So what you're asking for is

1   discovery through when?
2           MR. PAOLINI:  It was through June 8th and then
3   we would produce -- because we have Mr. Torbin, because of
4   his availability -- I'm sorry, Mr. Albino's availability,
5   he wasn't available June 5th, so we were going to continue
6   fact discovery essentially through that date.  I guess
7   technically it would have been June 8th.
8           MR. DeMICCO:  Right.
9           MR. PAOLINI:  And then our -- plaintiff's
10  experts would be due within a week of that, I think --
11  Tom, correct me if I'm wrong, I think it was June 15th.
12          MR. DeMICCO:  I think so.  I may have been --
13  you may have even said June 8th, but whatever it is, the
14  15th to 18th, I'm fine with that.  And then the dates
15  thereafter were within like 30 days, lock step, until we
16  got to November where we were submitting pretrial
17  memorandum and we had a trial-ready date of early January
18  2016.
19          THE COURT:  And how long will the case take to
20  try?
21          MR. DeMICCO:  We think at least five days, Your
22  Honor.
23          THE COURT:  Okay.
24          MR. DeMICCO:  Without including jury selection.
25          THE COURT:  All right.

|    |                                                                          |
|----|--------------------------------------------------------------------------|
| 1  | MR. DeMICCO:  But I really can't comment because                         |
| 2  | I don't even know what experts plaintiff has on his side.                |
| 3  | THE COURT:  No, that's fine, that's fine.  I                             |
| 4  | just wanted to get a ball park.  So let's pick a jury on                 |
| 5  | January 8.                                                               |
| 6  | MR. PAOLINI:  That's perfect, Your Honor.                                |
| 7  | THE COURT:  We'll start the trial on Monday the                          |
| 8  | 11th and I'll set aside time.  We've got the Martin Luther               |
| 9  | King holiday would be the 18th, but I'll put aside the                   |
| 10 | weeks of the 11th and the 18th -- obviously the Court is                 |
| 11 | closed on the 18th -- and we'll get it done.                             |
| 12 | MR. PAOLINI:  That's perfect, Your Honor, and if                         |
| 13 | we haven't submitted -- shall I just add those dates to                  |
| 14 | the order?                                                               |
| 15 | THE COURT:  Sure.                                                        |
| 16 | MR PAOLINI:  Okay.                                                       |
| 17 | MR. DeMICCO:  And, Your Honor, there was just                            |
| 18 | one other issue and I don't mean to -- I haven't raised                  |
| 19 | this with Mr. Paolini although it's been raised in prior                 |
| 20 | cases -- it's not an issue right now, I just wanted to                   |
| 21 | alert Your Honor to the fact that we may at some point,                  |
| 22 | after plaintiff's experts have been disclosed, their                     |
| 23 | reports, may again request an examination and cross                      |
| 24 | sectioning of the evidence which Your Honor had previously               |
| 25 | denied but had done so without prejudice.  So --                         |

1           THE COURT:  All right.  Again, we'll see how
2   that goes.
3           MR. DeMICCO:  Okay.
4           THE COURT:  All right.  Anything else we can
5   usefully do today?
6           MR. PAOLINI:  I think --
7           MR. DeMICCO:  Not from our side, Your Honor.
8           MR. PAOLINI:  Not from plaintiff's either, Your
9   Honor.
10          THE COURT:  All right, good luck.
11          (Whereupon the above matter was adjourned at 1:25
12  o'clock, p. m.)

C E R T I F I C A T E

	I, Susan E. Catucci, RMR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.


		/S/ Susan E. Catucci
		_____

		Susan E. Catucci, RMR
		Official Court Reporter
		915 Lafayette Boulevard
		Bridgeport, Connecticut  06604
		Tel: (917) 703-0761